UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ORECK DIRECT, LLC                         CIVIL ACTION


VERSUS                                    NO.  07-2744


DYSON, INC.                               SECTION "R" (4)


**ORDER AND REASONS**

Before the Court is defendant's motion for attorneys' fees
and costs.  For the following reasons, the Court GRANTS
defendant's motion and awards attorneys' fees and costs but
determines that the requested award of over one-half million
dollars in fees for a single motion is excessive.


**I.   BACKGROUND**

Plaintiff Oreck Direct, LLC, and defendant Dyson, Inc., are
competitors in the vacuum cleaner industry.  On May 1, 2007,
Oreck sued Dyson for false advertising under § 43(a) of the
Lanham Act, 15 U.S.C. § 1125(a)(1)(B) and violations of the
Louisiana Unfair Trade Practices Act (LUTPA), La. Rev. Stat.
51:1405.  Oreck alleged that Dyson made false representations

about the qualities of its "DC18" model vacuum cleaner in its advertising and promotion of that vacuum.  Specifically, Oreck contended that Dyson's various advertising claims that the DC18 "does not lose suction" and that it is the "most powerful lightweight" vacuum cleaner were false. (R. Doc. 1 at 3).

This was not the first time that Oreck brought an action for false advertising and unfair trade practices against Dyson. Oreck filed this suit only four months after it settled an earlier suit involving false advertising claims on Dyson's "no loss of suction" ad campaign. On February 10, 2005, Oreck sued Dyson under § 43(a) of the Lanham Act and under LUTPA, alleging that Dyson's advertising claims that its vacuum cleaners did not lose suction were false and misleading. (Civ. A. No. 05-0361, R. Doc. 1).  Oreck ultimately settled its false advertising claims against Dyson in that earlier action and agreed to dismiss its claims with prejudice in a settlement agreement that was effective as of January 5, 2007.  Oreck settled its claims against Dyson for a confidential amount.[1]  The settlement agreement contained a "Release and Covenant Not to Sue" provision in which Oreck released Dyson "from all advertising . . . claims arising out of, and related to, the claims in the [earlier]

---

[1] *See* Dyson's Mem. Supp. Ex. E-A, Settlement Agreement and Mutual Release: Oreck and Dyson Binding Settlement Term Sheet at ¶ 4.

Action" and agreed to dismiss its claims with prejudice.[2]  Oreck

further agreed that Dyson would be allowed to use advertising

claims that it was making about any product "existing in the

United States marketplace" as of January 5, 2007, the effective

date of the settlement, without incurring any further liability

to Oreck.[3]  The Court granted a joint motion to dismiss the first

action with prejudice on January 10, 2007. (Civ. A. No. 05-0361,

R. Doc. 148).

Dyson moved to dismiss Oreck's complaint in this action, or

in the alternative, for summary judgment, on three separate

grounds. (R. Doc. 25).  It argued that the doctrine of res

judicata precluded Oreck from bringing this action because Oreck

already settled its claims against Dyson's "no loss of suction"

advertising in the earlier litigation and agreed to dismiss those

claims with prejudice.  Second, Dyson argued that the settlement

agreement executed in the first case shielded it from liability

for any false advertising claims with respect to the DC18.

Third, Dyson argued that its advertising claims about the DC18

are non-actionable puffery.  The Court concluded that the

doctrine of res judicata barred Oreck's claims, and granted

---

[2] Dyson's Mem. Supp. Ex. E-A, Settlement Agreement and Mutual
Release at ¶¶ 3, 4;  Settlement and Mutual Release: Oreck and
Dyson Binding Settlement Term Sheet at ¶¶ 2, 3.
[3] Dyson's Mem. Supp. Ex. E-A, Settlement Agreement and Mutual
Release: Oreck and Dyson Binding Settlement Term Sheet at ¶ 1(a).

summary judgment in favor of Dyson. (R. Doc. 40). Plaintiff

moved the Court to reconsider its decision pursuant to Federal

Rule of Civil Procedure 59(e), and the Court denied the motion,

finding that plaintiff's claims were barred by both the res

judicata transactional test and the release in the settlement

agreement. (R. Doc. 49). The Fifth Circuit has since affirmed

the Court's summary judgment decision. *See Oreck Direct, LLC v.*

*Dyson, Inc.*, --- F.3d ---, 2009 WL 428451 (5th Cir. 2009).

Defendant Dyson now moves for attorneys' fees pursuant to Rule

54(d)(2). Oreck opposes the motion.

## II. DISCUSSION

### A. Whether Dyson can recovery attorneys' fees

Dyson contends that Oreck breached the "Releases and

Covenant Not to Sue" provision of their settlement agreement and

is entitled to attorneys' fees under another provision of the

agreement awarding attorneys' fees to the "prevailing Party" in

the event of breach. Oreck argues that Dyson is not entitled to

attorneys' fees because there has never been any finding by this

Court that Oreck's second lawsuit constitutes a breach of the

settlement agreement.

Under Federal Rule of Civil Procedure 54(d)(2), a party can

seek attorneys' fees by motion no later than 14 days after the

entry of judgment "unless the substantive law requires those fees

to be proved at trial as an element of damages."  The Committee

Note explains that Rule 54(d) does not "apply to fees recoverable

as an element of damages, as when sought under the terms of a

contract; such damages typically are to be claimed in a pleading

and may involve issues to be resolved by a jury."  But when

attorneys' fees are a collateral matter, they need not be proven

at trial and may be determined following adjudication of the

claims. *See Rockland Trust Co. v. Computer Associated Int'l*, 2008

WL 3824791 at *5 (D. Mass. 2008) (citing *Pride Hyundai, Inc. v.*

*Chrysler Fin. Co., LLC,* 355 F. Supp. 2d 600, 602 (D. R.I. 2005));

*Consolidated Biscuit Co. v. Karpen*, 170 F. Supp. 2d 782, 785

(N.D. Ohio 2001).  Courts have generally found that contractual

attorneys' fees are collateral, and thus may be awarded after

judgment, when the fees are sought pursuant to a "prevailing

party" contract provision. *See Engel v. Teleprompter Corp.*, 732

F.2d 1238, 1242 (5th Cir. 1984) (defendant entitled to attorneys'

fees when he became "prevailing party" after appeal); *Rissman v.*

*Rissman*, 229 F.3d 586, 588 (7th Cir. 2000) ("Fees for work done

during the case should be sought after decision, when the

prevailing party has been identified"); *Capital Asset Research*

*Corp. v. Finnegan*, 216 F.3d 1268, 1272-73 (11th Cir. 2000) ("the

identity of the prevailing party had to be established before

that party's right to attorneys' fees became manifest").

Oreck asserts that an award of attorneys' fees here is not "collateral," but instead would require construction of the underlying contract. The case on which Oreck primarily relies, *Carolina Power and Light Co. v. Dynegy Marketing and Trade*, 415 F.3d 354 (4th Cir. 2005), is distinguishable. There, the court was faced with a contractual provision providing that the nonbreaching party was entitled to "reasonable out-of-pocket expenses incurred by it including legal fees, by reason of the enforcement and protection of its rights under [the contract]." *Id.* at 355-56. The Fourth Circuit found that, because the claim for legal costs "is not limited to expenses incurred during the underlying litigation," the claim was an element of damages to be proven at trial under the substantive law governing the action. *Id.* at 356. The court further noted that unlike a right to attorneys' fees collateral to the merits of an action, which does not accrue until litigation is actually brought, the seller's right to legal costs accrued as soon as the buyer breached the agreement. *Id.* at 359. In contrast, Dyson's request for attorneys' fees is limited to expenses incurred during the litigation, since its request is pursuant to a "prevailing party" provision. The settlement provides that, "[i]n the event of a breach of this Agreement, the prevailing Party shall be entitled to its costs and attorneys' fees." Because attorneys' fees and costs are awarded to the prevailing party — not the nonbreaching

party — the agreement contemplates that attorneys' fees will be awarded only after litigation is brought and judgment is rendered. Accordingly, the award of attorneys' fees is collateral and thus appropriate under Rule 54(d)(2).

That this case is not premised on a breach of contract action does not render Dyson's request for attorneys' fees a substantive question. The Fifth Circuit allows defendants to recover attorneys' fees despite a failure to plead them in the answer to a complaint. *See Engel*, 732 F.2d at 1240-41 ("Where a statute or contractual provision authorizes a fee award, such an award becomes the rule rather than the exception, and should be awarded routinely as are costs of suit."); *see also Capital Asset Research*, 216 F.3d at 1272 (allowing defendant to recover attorneys' fees despite failure to seek them in pleadings when the contract was in evidence and expressly provided attorneys' fees to the prevailing party). Although plaintiff brought this suit under the Lanham Act, the settlement agreement has been at issue throughout this litigation, and one of Dyson's arguments for summary judgment was that the settlement agreement shielded it from liability. The Court's decision that res judicata barred Oreck's suit was also effectively a finding that Oreck violated the provision in the settlement agreement whereby it agreed to provide Dyson with "full and complete releases from all advertising and patent claims arising out of, and related to, the

claims in the Action." *See Oreck Direct LLC v. Dyson, Inc.* 544 F.
Supp. 2d 502, 506 (E.D. La. 2007) ("Oreck's claims [in this
action] were part of the same cause of action that it brought in
the first suit").  The Court also considered the release
provision of the settlement agreement in its order on
reconsideration, finding that "by virtue of the settlement,
release and stipulation of dismissal, res judicata bars Oreck's
claim regarding the promotion of the DC18." (R. Doc. 49).
Because Oreck breached the release provision of the settlement
agreement and Dyson prevailed in the litigation, Dyson is
entitled to an attorneys' fee award under the settlement
agreement.

**B.   Attorneys' fees calculation**

The Fifth Circuit has held that when state law provides the
rule of decision for the substantive issues in a case, state law
controls both the award of and the reasonableness of attorney's
fees. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir.
2002).  Although plaintiff's suit was brought under federal law,
the attorneys' fee award is premised on a breach of the parties'
settlement agreement – an issue in which state law provides the
rule of decision.  Accordingly, the Court will apply Louisiana
law in considering the award of attorneys' fees.

Attorneys' fees are only awarded under Louisiana law if
specifically provided for by contract or by statute. *See State*

*Dept. of Trans. and Dev. v. Restructure Partners, LLC*, 985 So.2d
212, 231 (La. Ct. App. 2008) (citing *State Dept. of Trans. and
Dev. v. Williamson*, 597 So.2d 439, 441 (La. 1992)).  Louisiana
Civil Code Article 2000 expressly authorizes parties to contract
for attorneys' fees.  Still, attorneys' fees are subject to
review and control by the courts, and counsel cannot collect a
fee that is "clearly excessive." *See Nat'l Information Servs.,
Inc. v. Gottsegen*, 737 So.2d 909, 919 (La. Ct. App. 1999).  Here,
the settlement agreement provides: "In the event of a breach of
this Agreement, the prevailing Party shall be entitled to its
costs and attorneys' fees." (Settlement Agreement at ¶9).

One method with which to begin the calculation of a fee
award is to multiply the hours worked by an hourly rate the Court
deems reasonable. *See Fourchon Docks, Inc. v. Milchem Inc.*, 849
F.2d 1561, 1568 (5th Cir. 1988).  Courts consider ten factors in
determining the reasonableness of attorneys' fees. *State v.
Williamson*, 597 So.2d 439, 442 (La. 1992).  The court considers:
(1) the ultimate result obtained; (2) the responsibility
incurred; (3) the importance of the litigation; (4) the amount of
work involved; (5) the extent and character of the work
performed; (6) the legal knowledge, attainment and skill of the
attorneys; (7) the number of appearances made; (8) the
intricacies of the facts involved; (9) the diligence and skill of
counsel; and (10) the court's own knowledge. *Id.*; *Rivet v. Dep't*

9

*of Trans. and Dev.*, 800 So.2d 777, 780 n.3 (La. 2001).[4]  These

factors are derived from Rule 1.5(a) of the Louisiana Rules of

Professional Conduct. *Williamson*, 597 So.2d at 442 n.9.  Rule

1.5(a) sets out slightly different factors to be considered in

determining whether a fee is reasonable.  The factors include:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the result obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

Rule 1.5(a) of the Louisiana Rules of Professional Conduct.

Dyson requests a reimbursement of the $550,143 in attorneys'

fees that it paid its counsel to bring the motion in issue.

Specifically, Dyson requests a reimbursement for the $512,027.50[5]

---

[4] These guidelines are permissive and consideration of all of them is not necessary. *Fourchon Docks,* 849 F.2d at 1568.

[5] Dyson actually paid Sullivan & Cromwell $527,625, but has reduced the requested amount by $15,597.50 to avoid any disputes over the redactions in Sullivan & Cromwell's bills to protect the

it paid Sullivan & Cromwell LLP and the $38,116.25 it paid Phelps

Dunbar LLP.  Both firms submitted detailed descriptions of the

hours incurred in the representation of defendant.  The

submissions contained, for each attorney on the case, a

description of the tasks performed and the amount of time spent

to accomplish the task.  Sullivan & Cromwell spent a total of

899.75 hours on the case, including 718.75 attorney hours and 181

paralegal and litigation support hours.  Phelps Dunbar spent a

total of 198.25 hours on the case, including 172 attorney hours

and 26.25 paralegal hours.

Oreck contends that the requested attorneys' fee award is

"manifestly unreasonable."  Oreck asserts that Dyson's counsel

billed for unnecessary work and that the hourly rate for Dyson's

counsel was significantly above-market for lawyers in this

jurisdiction.

### 1.   Hours worked

Oreck submits three declarations in support of its

contention that many of the hours incurred by Dyson's counsel

were unnecessary.  Oreck first offers the affidavit of its own

attorney, Fred Bradley.  In the affidavit, Bradley details the

time plaintiff's counsel spent on each phase of this action and

compares it to the time spent by defense counsel.  For instance,

---

attorney-client privilege or attorney work product. (Steinberg
Decl. ¶25).

defense counsel spent 500.25 hours in drafting its summary

judgment motion, whereas plaintiff's counsel spent only 103 hours

in drafting the opposition.  To prepare for oral argument,

defense counsel spent 128 hours.  Plaintiff's counsel spent

31.75.  In total, defense counsel spent over quadruple the number

of hours plaintiff's counsel spent on the case.

Oreck next offers the affidavits of Dane Ciolino, a law

professor and expert in legal ethics, and Katherine Hawke, an

attorney, legal auditor, and expert in legal invoice billings.

In his affidavit, Ciolino evaluates the requested fees under the

Louisiana Rules of Professional Conduct

and concludes that they are unreasonable.  In her affidavit,

Hawke evaluates the requested fees for adherence to the billing

guidelines in the ABA Model Rules of Professional Conduct and

concludes that many of the billing entries are vague and

duplicative.  Hawke concludes that at the firms' requested rates,

the bills should be reduced by $230,359.77 or about 40%.  The

Court will consider these reports, but will also consider its own

independent knowledge.  The Fifth Circuit has noted that a court

is itself an expert in attorneys' fees and "may consider its own

knowledge and experience concerning reasonable and proper fees

and may form an independent judgment with or without the aid of

witnesses as to value." *Campbell v. Green*, 112 F.2d 143, 144 (5th

Cir. 1940); *see also Nat'l Information Servs.*, 737 So.2d at 920

("Most of these particulars [in determining attorneys' fees can
be determined by the trial court and this court by reviewing the
pleadings and evidence in the record in the case."").
Accordingly, the Court will make its judgment as to the
appropriate amount of attorneys' fees based on its knowledge and
the information and opinions in the record.

The Court notes that the "review of purportedly excessive
attorney fees should be tempered with judicial restraint." *Nat'l
Information Services*, 737 So.2d at 920.  But here, the 1098 hours
defense counsel expended on this summary judgment motion is
clearly excessive, particularly in light of counsel's high
billing rates.  The result here is a bill of over one-half
million dollars for one motion that basically involved whether
the settlement of the first suit barred the second.  Although the
motion involved some document review, this was not a summary
judgment motion on a huge factual record.  The nature of the
issues suggests that the amount of time expended was excessive.
Plaintiff's counsel did an exemplary job on this case and billed
not even one-fourth of the hours billed by defense counsel.  In
addition, the Court agrees with plaintiff's experts that
counsel's time entries are vague.  Numerous time entries simply
say "review materials" or "miscellaneous review."  Additionally,
because seven different attorneys were working on the motion,
many of the hours are duplicative.  For instance, Sullivan &

13

Cromwell attorneys spent 103.25 hours drafting and revising the reply brief in the case.  Specifically, partner Michael Steinberg spent 10 hours, senior associate Adam Brebner spent 16.75 hours, and junior associate Anthony Lewis spent 76.5 hours drafting and revising the reply brief.  At their rates of $1075, $685, and $575 per hour respectively, that amounts to $66,211.24 for a 10-page reply brief.

The Court acknowledge that defense lawyers did excellent work and achieved a great result for their client.  But the amount of time defense counsel spent on this single summary judgment motion, particularly one decided on *res judicata* grounds, is clearly excessive.  After Sullivan & Cromwell spent 718 attorney hours on the motion, Phelps Dunbar spent another 172 hours of attorney time, which would be about four weeks of one lawyer's time at eight hours a day.  Some of Phelps Dunbar's work was duplicative of the work done by Sullivan & Cromwell. Although Oreck's expert found that attorney hours should be reduced by 40%, the Court will give the attorneys the benefit of the doubt on some of the vague entries and reduce the hours billed by each attorney by 30%.  For Sullivan & Cromwell, the Court subtracts 40.725 hours for Michael Steinberg, 36.825 hours for Adam Brebner, 118.275 hours for Anthony Lewis, and 19.8 hours for George Pence, leaving 503.125 attorney hours for Sullivan & Cromwell.  The Court subtracts 34.05 hours for David Patron, 4.65

hours from H. Barton, and 12.9 hours from Katie Lasky, leaving 120.4 hours for Phelps Dunbar.

## 2. Hourly rate

The invoices detail the tasks performed by each attorney or paralegal and the applicable billing rate. Defendant's motion includes affidavits by defendant's counsel, submitting that the applied billing rates are reasonable for other national law firms with large New York City offices. The hourly rates for Sullivan & Cromwell range from $1075 for the senior partner on the case to $460 for a junior associate on the case. The hourly rates for Phelps Dunbar range from $250 for the senior partner on the case to $140 for an associate on the case.

Under the Louisiana Rules of Professional Conduct, the rates customarily charged in the locality are a factor to be considered in determining whether a fee is reasonable. *See* Rule 1.5(a)(3) of the Louisiana Rules of Professional Conduct. A fee is clearly excessive if it is "so grossly out of proportion with the fees charged for similar services by other attorneys in the locale as to constitute an unquestionable abuse of the attorney's professional responsibility to the public." *Gold, Weems, Bruser, Sues & Rundell v. Granger*, 947 So.2d 835, 840 (La. Ct. App. 2006) (internal citations omitted). Sullivan & Cromwell has provided no evidence that its fees are similar to those charged in the New Orleans legal market. The Court is familiar with the local legal

15

market and notes that the top rate for partner-level attorneys here is between $400 and $450 per hour.  These rates are lower than the $460 hourly rate of Sullivan & Cromwell's lowest-level associate on the case.  Although Sullivan & Cromwell is one of the nation's finest firms and among the small few that can command such high rates, its rates are unreasonable in this local market, and the Court must accordingly reduce them.  The Court finds that an hourly rate of $400, for all Sullivan & Cromwell attorney hours, is appropriate, and that $100 per hour is a reasonable rate for the work of Sullivan & Cromwell paralegals. Such a rate brings Sullivan & Cromwell's fees more in line with local rates for similar services.  Thus for the 503.125 attorney hours worked, the Court awards $201,250.00.  For the 181 paralegal and litigation assistance hours, the Court awards $18,100.00.  Because Phelps Dunbar's rates are reasonable for the locality, the Court, having reduced its requested attorney hours by 30%, awards $25,300.63 for Phelps Dunbar's attorney hours. For its 26.25 paralegal and law clerk hours, the Court awards the requested $1,972.50.

**C.    Costs**

Dyson also requests reimbursement of the expenses it incurred in defending this action, in the amount of $22,747.28. Oreck has not objected to the amount of the expenses.  Having reviewed the declarations in support of counsel's expenses, the

Court finds that the asserted costs are reasonable and awards the full amount.

## III. CONCLUSION

For the foregoing reasons, the Court awards Dyson $246,623.13 in attorneys' fees and $22,747.29 in expenses.

New Orleans, Louisiana, this __7th__ day of April, 2009.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE