UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ORECK DIRECT, LLC                         CIVIL ACTION

VERSUS                                    NO. 07-2744

DYSON, INC.                               SECTION "R" (4)


**ORDER AND REASONS**

Before the Court is defendant's motion for attorneys' fees in connection with its defense of plaintiff's appeal to the Fifth Circuit.[1] For the following reasons, the Court GRANTS defendant's motion and awards attorneys' fees, but in an amount less than the amount requested.

**I. BACKGROUND**

Plaintiff Oreck Direct, LLC, and defendant Dyson, Inc., are competitors in the vacuum cleaner industry. On May 1, 2007, Oreck sued Dyson for false advertising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) and violations of the Louisiana Unfair Trade Practices Act (LUTPA), La. Rev. Stat.

---

[1] Dyson has not moved for costs or expenses in connection with the appeal.

1

51:1405. Oreck alleged that Dyson made false representations about the qualities of its "DC18" model vacuum cleaner in its advertising and promotion of that vacuum. Specifically, Oreck contended that Dyson's various advertising claims that the DC18 "does not lose suction" and that it is the "most powerful lightweight" vacuum cleaner were false. (R. Doc. 1 at 3).

Oreck filed this suit only four months after it settled an earlier suit involving false advertising claims on Dyson's "no loss of suction" ad campaign. On February 10, 2005, Oreck sued Dyson under § 43(a) of the Lanham Act and under LUTPA, alleging that Dyson's advertising claims that its vacuum cleaners did not lose suction were false and misleading. (Civ. A. No. 05-0361, R. Doc. 1). Oreck ultimately settled its false advertising claims against Dyson in that earlier action and agreed to dismiss its claims with prejudice in a settlement agreement that was effective as of January 5, 2007. Oreck settled its claims against Dyson for a confidential amount.[2] The settlement agreement contained a "Release and Covenant Not to Sue" provision in which Oreck released Dyson "from all advertising . . . claims arising out of, and related to, the claims in the [earlier] Action" and agreed to dismiss its claims with prejudice.[3] Oreck

---

[2] *See* Dyson's Mem. Supp. Ex. E-A, Settlement Agreement and Mutual Release: Oreck and Dyson Binding Settlement Term Sheet at ¶ 4.

[3] Dyson's Mem. Supp. Ex. E-A, Settlement Agreement and Mutual Release at ¶¶ 3, 4; Settlement and Mutual Release: Oreck and

further agreed that Dyson would be allowed to use advertising claims that it was making about any product "existing in the United States marketplace" as of January 5, 2007, the effective date of the settlement, without incurring any further liability to Oreck.[4] The Court granted a joint motion to dismiss the first action with prejudice on January 10, 2007. (Civ. A. No. 05-0361, R. Doc. 148).

Dyson moved to dismiss Oreck's complaint in this action, or in the alternative, for summary judgment, on three separate grounds. (R. Doc. 25). It argued that the doctrine of res judicata precluded Oreck from bringing this action because Oreck already settled its claims against Dyson's "no loss of suction" advertising in the earlier litigation and agreed to dismiss those claims with prejudice. Second, Dyson argued that the settlement agreement executed in the first case shielded it from liability for any false advertising claims with respect to the DC18. Third, Dyson argued that its advertising claims about the DC18 are non-actionable puffery. The Court concluded that the doctrine of res judicata barred Oreck's claims, and granted summary judgment in favor of Dyson. (R. Doc. 40). Plaintiff moved the Court to reconsider its decision pursuant to Federal Rule of Civil Procedure 59(e), and the Court denied the motion,

---

Dyson Binding Settlement Term Sheet at ¶¶ 2, 3.
[4] Dyson's Mem. Supp. Ex. E-A, Settlement Agreement and Mutual Release: Oreck and Dyson Binding Settlement Term Sheet at ¶ 1(a).

3

finding that plaintiff's claims were barred by both the res judicata transactional test and the release in the settlement agreement. (R. Doc. 49).  The Fifth Circuit affirmed the Court's summary judgment decision. *See Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398 (5th Cir. 2009).

On April 7, 2009, the Court awarded defendant Dyson attorneys' fees in connection with the worked performed by Sullivan & Cromwell LLP and Phelps Dunbar LLP on the litigation in the district court. (R. Doc. 103).  Dyson now moves for attorneys' fees for the worked performed by Kirkland & Ellis LLP on its successful defense of Oreck's appeal to the Fifth Circuit.

## II. DISCUSSION

The Court previously found that Dyson was entitled to attorneys' fees under the provision of the settlement agreement between Dyson and Oreck providing that a "prevailing party" in litigation arising from the agreement was entitled to attorneys' fees. (*See* R. Doc. 103).  Because Dyson prevailed on appeal, it may also recover the attorneys' fees it incurred in defending plaintiff's appeal pursuant to this provision.

The Fifth Circuit has held that when state law provides the rule of decision for the substantive issues in a case, state law controls both the award of and the reasonableness of attorney's fees. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir.

2002). The Court previously determined that the attorneys' fee award is governed by Louisiana law since it is premised on a breach of the parties' settlement agreement – an issue in which state law provides the rule of decision. Accordingly, the Court will again apply Louisiana law in considering the award of attorneys' fees.

Attorneys' fees are only awarded under Louisiana law if specifically provided for by contract or by statute. *See State Dept. of Trans. and Dev. v. Restructure Partners, LLC*, 985 So.2d 212, 231 (La. Ct. App. 2008) (citing *State Dept. of Trans. and Dev. v. Williamson*, 597 So.2d 439, 441 (La. 1992)). Louisiana Civil Code Article 2000 expressly authorizes parties to contract for attorneys' fees. Still, attorneys' fees are subject to review and control by the courts, and counsel cannot collect a fee that is "clearly excessive." *See Nat'l Information Servs., Inc. v. Gottsegen*, 737 So.2d 909, 919 (La. Ct. App. 1999). Here, the settlement agreement provides: "In the event of a breach of this Agreement, the prevailing Party shall be entitled to its costs and attorneys' fees." (Settlement Agreement at ¶9).

One method with which to begin the calculation of a fee award is to multiply the hours worked by an hourly rate the Court deems reasonable. *See Fourchon Docks, Inc. v. Milchem Inc.*, 849 F.2d 1561, 1568 (5th Cir. 1988). Courts consider ten factors in determining the reasonableness of attorneys' fees. *State v.*

*Williamson*, 597 So.2d 439, 442 (La. 1992). The court considers: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of work involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment and skill of the attorneys; (7) the number of appearances made; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge. *Id.*; *Rivet v. Dep't of Trans. and Dev.*, 800 So.2d 777, 780 n.3 (La. 2001).[5] These factors are derived from Rule 1.5(a) of the Louisiana Rules of Professional Conduct. *Williamson*, 597 So.2d at 442 n.9. Rule 1.5(a) sets out slightly different factors to be considered in determining whether a fee is reasonable. The factors include:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

> (3) the fee customarily charged in the locality for similar legal services;

> (4) the amount involved and the result obtained;

---

[5] These guidelines are permissive and consideration of all of them is not necessary. *Fourchon Docks,* 849 F.2d at 1568.

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

Rule 1.5(a) of the Louisiana Rules of Professional Conduct.

Dyson requests a reimbursement of $102,993.75 in attorneys' fees that it paid its counsel for work on its defense to plaintiff's appeal. The firm that worked on Dyson's appellate brief, Kirkland & Ellis, LLP, submitted detailed descriptions of the hours incurred in its representation of Dyson on appeal. Dyson requests reimbursement for 132.75 hours incurred by Jessica Kaiser, an associate, 31.25 hours incurred by David Callahan, a partner, and 39 hours incurred by Tom Monagan, a partner. (R. Doc. 91-2). The hourly rates charged by these attorneys were $440-$470 for Kaiser, $765 for Callahan, and $530 for Monagan. (R. Doc. 91-2).

Oreck contends that the requested attorneys' fee award is unreasonable. Oreck asserts that Dyson's counsel billed for unnecessary work and that the hourly rate for Dyson's counsel was above-market for appellate lawyers in this jurisdiction.

### 1. Hours worked

Oreck offers the affidavit of Dane Ciolino, a law professor and expert in legal ethics, to support its contention that many of the hours billed were excessive. Oreck offered a similar affidavit by Ciolino in its opposition to Dyson's attorneys' fees request in connection with the district court litigation, and the Court relied on the motion in reducing the attorneys' fees. (R. Doc. 103). In his affidavit, Ciolino contends that many of the hours requested are unreasonable since they were incurred in order to get the Kirkland & Ellis attorneys up to speed on this case on which they had not previously worked. Ciolino also avers that given the basic *res judicata* issued involved in the case, the number of hours spent on the brief was excessive.

The Court notes that the "review of purportedly excessive attorney fees should be tempered with judicial restraint." *Nat'l Information Services*, 737 So.2d at 920. Here, the 203 hours counsel expended on the appeal does not appear clearly excessive. In particular, the Court does not find that the hours spent "getting up to speed" on the case are unreasonable. That Dyson used a different firm that was unfamiliar with the case for the appellate portion of the litigation is not unreasonable. Even if Dyson had used the same firm that participated in the litigation in district court, different attorneys at the firm who specialized in appellate litigation would likely be working on

Dyson's response brief. Those attorneys would also have to "get up to speed" on the litigation. The use of appellate specialists for appellate litigation is certainly reasonable, and thus the Court will not reduce the attorneys' fees based on this argument.

The Court has reviewed the detailed time entries submitted by the Kirkland & Ellis attorneys and finds that the hours requested are reasonable. The bulk of the work on the case was done by an associate, with partners working on the appeal strategy and reviewing and editing the associates's work on the response brief. The time entries are quite detailed and meaningfully express exactly what work the attorney was doing during the billed time. The entries do not appear duplicative. In addition, Kirkland & Ellis declined to request about $20,000 in reimbursement for the time of two other attorneys that worked on the case. The Court finds the 203 hours requested to be reasonable.

**2. Hourly rate**

The invoices submitted by Kirkland & Ellis detail the tasks performed by each attorney and the applicable billing rate. Defendant's motion refers to the affidavits previously submitted by defendant's former counsel, Sullivan & Cromwell, LLP, to support its contention that the applied billing rates are reasonable for national law firms.

Under the Louisiana Rules of Professional Conduct, the rates customarily charged in the locality are a factor to be considered in determining whether a fee is reasonable. *See* Rule 1.5(a)(3) of the Louisiana Rules of Professional Conduct. A fee is clearly excessive if it is "so grossly out of proportion with the fees charged for similar services by other attorneys in the locale as to constitute an unquestionable abuse of the attorney's professional responsibility to the public." *Gold, Weems, Bruser, Sues & Rundell v. Granger*, 947 So.2d 835, 840 (La. Ct. App. 2006) (internal citations omitted). In its previous order on attorneys' fees, the Court found that the fees requested by Sullivan & Cromwell, a national law firm, were excessive compared to those charged in the New Orleans legal market. (R. Doc. 103). Sullivan & Cromwell had provided no evidence that its fees were similar to those charged in the New Orleans legal market. Similarly, neither has Kirkland & Ellis. As the Court stated in its previous order, the Court is familiar with the local legal market and knows that the top rate for partner-level attorneys here is between $400 and $450 per hour. These rates are similar to the $440 hourly rate of Kirkland & Ellis's associate on the case. Because Kirkland & Ellis's rates are unreasonable in this local market, the Court must reduce them. In keeping with the fees awarded in the previous order, the Court will use an hourly rate of $400 for all Kirkland & Ellis attorney hours. Such a

rate brings Kirkland & Ellis's fees more in line with local rates for similar services. Thus for the 203 attorney hours worked, the Court awards $81,200.00.

## III. CONCLUSION

For the foregoing reasons, the Court awards Dyson $81,200.00 in attorneys' fees.

New Orleans, Louisiana, this __8th__ day of June, 2009.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE